**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NATIONAL TRUST INSURANCE
COMPANY,

                      Plaintiff,

-vs-                                        Case No.  3:16-cv-695-J-34PDB

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

                      Defendant.
_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss or, Alternatively, Motion to Transfer Venue and Brief in Support of Defendant's Motion (Doc. No. 7; Motion), filed on July 5, 2016.  In the Motion, Defendant requests that the Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, or, alternatively, transfer this case to the Charlotte Division of the United States District Court for the Western District of North Carolina. See Motion at 1-2, 10.  On July 10, 2016, Plaintiff filed a response in opposition to the Motion. See Plaintiff National Trust Insurance Company's Response in Opposition to Defendant's Motion to Dismiss or, Alternatively, Motion to Transfer Venue (Doc. No. 12; Response).   In addition, on July 20, 2016, Plaintiff filed Plaintiff's Notice of Filing Affidavit and Corrected Exhibit (Doc. No. 13; Notice) in support of its Response. Accordingly, the Motion is ripe for resolution.

**I.     Factual Background and Procedural History**

In the Complaint for Declaratory Judgment (Doc. No. 2; Complaint), Plaintiff National Trust Insurance Company (NTIC) asserts that it issued an insurance policy (the NTIC Policy) to Linear Masonry, Inc. (Linear), providing coverage for the policy period beginning April 14, 2010, and ending April 14, 2011. See Complaint ¶ 7. NTIC suggests that the NTIC Policy is governed by Florida law because it was both "issued and executed in Florida." Id. Subsequently, Defendant Pennsylvania National Mutual Casualty Insurance Company (Penn National) issued a policy (the Penn National Policy) to Linear providing coverage for the policy period beginning April 14, 2011, and ending April 14, 2012. See id. ¶ 8.

According to NTIC, on December 27, 2009, Tapestry Park II Hotel, LLC (Tapestry Park) entered into a contract with general contractor Cox & Schepp, Inc. (Cox), for the construction of a hotel in Duval County, Florida. See id. ¶ 11. NTIC alleges that, on September 6, 2010, Cox hired Linear as a subcontractor to install brick ties, brick veneer, and vapor/moisture barriers throughout the construction project. See id. ¶ 12. The hotel was completed in January of 2011. See id. ¶ 15. On October 12, 2012, Tapestry Park filed suit in Duval County, Florida, against several engineering and construction firms, including Cox (the State Court Action). Id. ¶ 10. In the State Court Action, Tapestry Park alleged that Cox breached its contract by failing to complete work on the hotel according to the contract's plans and specifications, thereby resulting in defects which, in turn, required repair. See id. ¶ 12. Tapestry Park further alleged that Cox violated the Florida Building Code. See id. ¶ 13. Notably, Tapestry Park did not name Linear as a party to this suit, see id. ¶ 14, and according to NTIC, Linear did not learn of the alleged defects until December 14, 2011, eight months after the NTIC Policy expired, see id. ¶ 17.

In response to Tapestry Park's complaint in the State Court Action, on December 6, 2012, Cox filed a third party complaint against numerous subcontractors, including Linear, seeking indemnification pursuant to the terms of the subcontracts. Id. ¶¶ 18, 21. With respect to Linear, Cox alleged that Linear breached its subcontract by failing to defend and indemnify Cox from Tapestry Park's claims and, further, by failing to name Cox as an additional insured in its insurance policy. See id. ¶ 23. Cox further alleged that Linear knowingly violated the Florida Building Code. See id. ¶ 24. According to NTIC, Linear tendered defense and indemnity of Cox's claims to both NTIC and Penn National, and while NTIC denied coverage, Penn National agreed to defend Linear, albeit under a full reservation of rights. See id. ¶¶ 25-26.

Ultimately, Penn National settled Cox's claims and thereafter sent NTIC a demand letter seeking reimbursement of the full settlement amount as well as all defense costs. See id. ¶¶ 27-28. In so doing, Penn National argued that the NTIC Policy provided coverage for Cox's claims against Linear. See id. ¶ 29. Believing there to be a "real, substantial and justiciable controversy between the parties with respect to insurance coverage," on June 6, 2016, NTIC filed the Complaint in the Fourth Judicial Circuit in and for Duval County, Florida. See Complaint at 1; ¶ 13. In the Complaint, NTIC seeks a declaratory judgment regarding its rights and obligations under the NTIC Policy. See id. ¶¶ 47-52. NTIC served Penn National with the Complaint on or around June 6, 2016, see Defendant's Notice of Removal to Federal Court (Doc. No. 1; Notice of Removal) at 1-2, and Penn National removed the case to this Court on July 5, 2016. Id. That same day, Penn National filed the instant Motion. In addition, on November 11, 2016, Penn National filed a counterclaim against NTIC asserting, as its first and second causes of action, that because NTIC had an obligation to

defend and indemnify Linear, pursuant to the "Other Insurance" and "Transfer of Rights" provisions of the Penn National Policy, Penn National is entitled to recover the sum expended on behalf of Linear from NTIC. See Penn National's Answer and Counterclaim (Doc. No. 20) at 11-18.

In the Motion, Penn National seeks to dismiss this action on the basis of improper venue under the provisions of Rule 12(b)(3), Federal Rules of Civil Procedure (Rule(s)). See Motion at 2. In the alternative, Penn National requests that this Court transfer the case to the United States District Court for the Western District of North Carolina. See id. (citing 28 U.S.C. §§ 1404 and 1406). For the reasons set forth below, the Court determines that Penn National's Motion is due to be denied.

## II.     Discussion

### A.     Motion to Dismiss

Citing Rule 12(b)(3), Penn National seeks dismissal of this action on the basis of improper venue. See Motion at 1. Specifically, Penn National argues that venue is improper in Florida because the NTIC Policy was issued to Linear – by NTIC's agents – in North Carolina, and because the pertinent witnesses are in North Carolina as well.[1] See Motion at 9-10. Although a challenge to a plaintiff's chosen forum is properly brought pursuant to Rule 12(b)(3), the substantive determination of whether venue is proper is governed by the applicable venue statutes. See Tritak v. Metro. Cas. Ins. Co., No. 3:08-CV-14-J-33JRK,

---

[1] Throughout the Motion, Penn National contends that the interpretation of the Penn National Policy is also at issue in this action. See, e.g., Motion at 9. While this is true in light of Penn National's counterclaim, the Court's focus in deciding this Motion is "on the action as filed[,] and not on the counterclaims imposed by the party seeking transfer." Motorola Mobility, Inc. v. Microsoft Corp., 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (quotation and citation omitted). NTIC's Complaint simply seeks a declaration of its obligations under the NTIC Policy and does not address Penn National's policy obligations.

-4-

2008 WL 312675, at *1 (M.D. Fla. Feb. 4, 2008).[2]  Notably, Penn National cites no venue provision or other authority for its contention that venue in Florida is improper or that venue in North Carolina would be proper.  More importantly, the Court concludes that Penn National's contention regarding improper venue is without merit.

Pursuant to 28 U.S.C. § 1441(a), "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  NTIC is an Indiana corporation with a principal place of business in Sarasota, Florida.  See Affidavit of Thomas A. Koval ¶ 4. (Koval Affidavit; Doc. No. 13-1).  Penn National is a Pennsylvania corporation with principal places of business in Harrisburg, Pennsylvania and Greensboro, North Carolina.  See Notice ¶ 7; Motion at 11.  As such, given that the amount in controversy is sufficient, see Complaint ¶ 27, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and thus, Penn National could properly remove the action to this Court.  See 28 U.S.C. § 1441(a).  When a case is removed from state court to federal court, venue is proper in the district and division that encompasses the location where the action was originally filed.  See id.  As NTIC filed the original case in Duval County, Florida, Penn National properly removed the action to the Jacksonville Division of the United States District Court for the Middle District of Florida.  See Local Rule 1.02(b)(1), United States District Court, Middle District of Florida (Local Rule(s)) (stating that the Jacksonville Division consists of Bradford, Baker, Clay,

---

[2] "Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Columbia, Duval, Flagler, Hamilton, Nassau, Putnam, St. Johns, Suwannee and Union Counties). Indeed, "28 U.S.C. § 1441(a), by requiring removal to the district court for the district in which the state action is pending, properly fixes the federal venue in that district." Hollis v. Fla. State Univ., 259 F.3d 1295, 1299 (11th Cir. 2001). Accordingly, the Court finds that venue is proper in this District and Division. See id. As such, the Motion to Dismiss pursuant to Rule 12(b)(3) will be denied, and the Court will turn to Penn National's alternative request for transfer of this action to another district.

### B.    Motion to Transfer Venue

Penn National alternatively asserts both that venue is proper in North Carolina and that the Charlotte Division of the Western District of North Carolina is actually a more convenient forum, and therefore requests that the Court transfer this case to that division and district pursuant to 28 U.S.C. §§ 1406(a) or 1404(a). See Motion at 1-2. To the extent Penn National relies on § 1406(a), the Motion is due to be denied. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Because this action was properly removed from the Circuit Court for Duval County and is now pending in the Jacksonville Division of the United States District Court for the Middle District of Florida, the Division of the District Court encompassing Duval County, venue is proper. See 28 U.S.C. § 1441(a). Accordingly, this case cannot be pending in the "wrong" division or district, as required by § 1406(a). See 28 U.S.C. § 1406(a). Thus, the Court will limit its consideration of transfer to the provisions of § 1404(a).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The standard for transfer under § 1404(a) gives broad discretion to the trial court. See Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347,1351 (M.D. Fla. 1999). In considering whether to transfer a case pursuant to § 1404(a), in the absence of consent among the parties, the district court must engage in a two-step inquiry. See 28 U.S.C. § 1404(a); Eye Care Int'l, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000); Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). The court must first determine, as a threshold matter, whether the case could have been filed in the proposed district. See Bookworld Trade v. Daughters of St. Paul, Inc., 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006); see also Colo. Boxed Beef Co. v. Coggins, No. 8:07-cv-00223-T-24-MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007). Next, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." Eye Care Int'l, Inc., 119 F. Supp. 2d at 1318; see also Bookworld Trade, 2006 WL 3333718, at *1. In making this determination, the court evaluates a number of factors.[3] See Stewart Org., Inc. v. Ricoh

---

[3] These factors include the following:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Colo. Boxed Beef Co., 2007 WL 917302, at *3 (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

Corp., 487 U.S. 22, 29 (1988). It is the movant's burden to establish that a case should be transferred to the suggested forum in the interests of convenience and justice. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("[T]he burden is on the movant to establish that the suggested forum is more convenient."); Colo. Boxed Beef Co., 2007 WL 917302, at *3. Moreover, "[i]n determining the propriety of transfer, the Court must give considerable weight to Plaintiff's choice of forum. Only if the Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should this Court disregard the choice of forum and transfer the action." Response Reward Sys., L.C. v. Meijer, Inc., 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002) (internal citations omitted); see also In re Ricoh Corp., 870 F.2d at 573 ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference."); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").**4**

### 1. Sufficiency of Proposed Venue

Although NTIC does not consent to transfer, neither party suggests that the Charlotte Division of the Western District of North Carolina would lack either personal jurisdiction or subject matter jurisdiction over this action. See generally Motion; Response. Ordinarily the Court would independently verify that the proposed transferee court would have jurisdiction and offer a proper venue. See Delorenzo v. HP Enter. Servs., LLC, 79 F. Supp. 3d 1277, 1280 (M.D. Fla. 2015) (citation omitted) (noting that, absent unanimous consent to transfer, § 1404(a) requires that a proposed transferee court have both personal and subject matter

---

[4] 28 U.S.C. § 1404(a) was amended in 2011 to permit transfer "to any district or division to which all parties have consented." While these cases were decided prior to this amendment, the analysis of § 1404(a)'s convenience and public interest factors remains applicable.

jurisdiction as well as offer a proper venue). However, because for the reasons set forth below the Court finds that Penn National has failed to carry its burden with respect to its transfer request, the Court will assume, arguendo, that this action could have been brought in the Charlotte Division of the Western District of North Carolina.

### 2. Fairness and Convenience Factors

#### i. The Convenience of the Witnesses and Parties

A significant factor under § 1404(a) is the convenience of witnesses, "and the moving party must make a specific showing of inconvenience to witnesses to succeed in requesting a venue transfer." Laica-Bhoge v. Eli Lilly & Co., No. 6:14-CV-1286, 2015 WL 3919515, at *5 (M.D. Fla. June 25, 2015) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989) (internal quotations omitted)). Here, Penn National asserts that this case should be transferred to North Carolina because "[NTIC's] claim for declaratory relief will require a Court [sic] to interpret the [NTIC] Policy and the Penn National Policy to determine which policy provided coverage for the damages alleged against Linear," and because "[t]he individuals to best respond to those [] issues are in North Carolina." Motion at 11. Conversely, NTIC maintains that "as this is an insurance coverage action, very few witnesses will be necessary," mostly consisting of corporate representatives, and that "all of NTIC's representatives are located in Sarasota, Florida." Response at 5.

Notably, neither party has submitted a list of proposed witnesses. "[A] general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be," does not merit transfer. Laica-Bhoge, 2015 WL 3919515 at *5 (quoting J.I. Kislak Mortg. Corp. v. Connecticut Bank and Trust Co., 604 F. Supp. 346, 347 (S.D. Fla. 1985)). This is so because, in analyzing the convenience

to non-party witnesses, the Court must determine whether a witness is 'key.'  See Mason, 146 F. Supp. 2d at 1361-62.  A witness is key if his or her testimony is likely to be significant enough that the witnesses's presence would be necessary at trial.  See id.  Additionally, in the case of employee witnesses, "their convenience is entitled to less weight because [the parties] will be able to compel their testimony at trial."  Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010).

Without providing specific details, Penn National summarily asserts that its witnesses are in North Carolina, see Motion at 12, while NTIC counters that its witnesses, as well as the alleged defective construction which forms the underlying basis of this action, are in Florida, see Response at 5.  With only this limited information, the Court cannot determine whether the parties intend to call any non-party witnesses, much less whether any particular witness would be considered 'key.'  Nevertheless, it appears that one of the parties – as well as its witnesses – will be inconvenienced regardless of which forum is ultimately selected.  On this record, Penn National has failed to show that North Carolina is a more convenient forum than Florida.  Absent additional information, the Court finds that this factor is neutral, and as such does not weigh in favor of transfer.  See Watson v. Cmty. Educ. Ctrs., No. 2:10-CV-00778-36-SPC, 2011 WL 3516150, at *5 (M.D. Fla. Aug. 11, 2011).

### ii. Location of Documents and Relative Ease of Access to Sources of Proof

The parties do not address the location of relevant documents or access to other sources of proof.  Instead, in discussing this factor, they continue to disagree about the number and materiality of witnesses.  See Motion at 12; Response at 5.  While North Carolina's federal courts consider the ease of access to witnesses when analyzing this

factor, see Speed Trac Techs., Inc. v. Estes Express Lines, 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008), Florida's federal courts instead focus on "the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial[,]" Trinity Christian, 761 F. Supp. 2d at 1327 (citing Meterlogic, Inc. v. Copier Solutions, Inc., 185 F. Supp. 2d 1292, 1300 (S.D. Fla. 2002); Silong v. United States, No. 5:05-CV-55-OC-10GRJ, 2006 WL 948048, at *3 (M.D. Fla. April 12, 2006)).  However, the parties failure to address the relevant facts is of little import here, as the location of relevant documents and other tangible sources is no longer a heavily weighted factor in this analysis given that technological advances now permit the electronic transmittal of documents.  See, e.g., Ivax Corp. v. B. Braun of Am., Inc., No. 00-4904-CIV-KING, 2001 WL 253253, at *2 (S.D. Fla. Feb. 28, 2001); see also Trinity Christian, 761 F. Supp. 2d at 1327. This is perhaps even more true in cases such as this where all, or nearly all, of the evidence is likely in documentary form.  Moreover, Penn National has "not demonstrated that there is any particular difficulty in producing the [necessary] materials or relevant documents," whether in North Carolina or Florida.  See Steifel Labs., Inc. v. Galderma Labs., Inc., 588 F. Supp. 2d 1336, 1340 (S.D. Fla. 2008).  As a result, the Court finds that this factor does not favor transfer.

### iii. Forum's Familiarity with Governing Law

The parties dispute whether Florida or North Carolina law controls.  Penn National argues that North Carolina law applies because the NTIC Policy was executed in North Carolina because it was delivered there.  See Motion at 13.  In response, NTIC asserts that Florida law applies because the NTIC Policy was executed in Florida when NTIC accepted and agreed to bind the policy from its Florida office.  See Response at 4.  To assess the

familiarity of the forum with the governing law, the Court must first determine which state's law applies to the interpretation of the NTIC Policy.

A federal court sitting in diversity applies the choice of law rules of the forum state. Rando v. Govt. Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009) (quoting McGow v. McCurry, 412 F.3d 1207, 1217 (11th Cir. 2005)).  As such, this Court looks to Florida's choice of law rules.  Florida's courts, in turn, apply the lex loci contractus choice-of-law rule to determine the law governing an insurance contract. Id. Pursuant to this rule, "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." Id. (quoting State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006)).  While the state where the insured executes the insurance application is generally the state of execution, the delivery of the policy can also constitute the "last act" necessary to execute a contract. See AIG Premier Ins. Co. v. RLI Ins. Co., 812 F. Supp. 2d 1315, 1329 (M.D. Fla. 2011) (citing Bloch v. Berkshire Ins. Co., 585 So. 2d 1137, 1138 (Fla. Dist. Ct. App. 1991) ("As to the choice of law issue, we agree with the trial court that this insurance contract, which was delivered to [plaintiff] in New York where he then resided, was regulated by New York, rather than Florida, law.")).  As such, "[t]he determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" Id. (quoting Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1092-93 (11th Cir. 2004) (alteration in original) (internal quotation omitted)).

"The last act necessary to complete [a] contract is the offeree's communication of acceptance to the offeror." B.J. Handley Trucking, 363 F.3d at 1093 (citing Buell v. State, 704 So. 2d 552, 555 (Fla. Dist. Ct. App. 1997)).  Indeed, applying Florida law, the Eleventh

Circuit Court of Appeals (Eleventh Circuit) previously affirmed the conclusion that the last act necessary to complete an insurance contract is the communication of the binder to the insured, which constitutes acceptance of the insured's offer to purchase insurance. See B.J. Handley Trucking, 363 F.3d at 1093 (affirming that the communication of an oral binder constituted acceptance of an offer to purchase insurance and therefore was the last act necessary to complete the contract); see also Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co., 916 F. Supp. 2d 1244, 1252 (M.D. Fla. 2013) (determining that an insurance contract became effective when the insurer accepted the insured's offer by issuing the policy from its Florida office, despite the fact that the contract was later delivered to the insured in Georgia); Granite State Ins. Co. v. Am. Bldg. Materials, Inc., No. 8:10-CV-1542-T-24-EAJ, 2011 WL 6025655, at *5 (M.D. Fla. Dec. 5, 2011) (noting that a written contract acceptance is effective at the time it is dispatched, not when it is received by the offeror). Under Florida law, the critical factor in this analysis is therefore the place of execution of the contract, not the place or places to which it is eventually delivered. CNL Hotels & Resorts, Inc. v. Houston Cas. Co., 505 F. Supp. 2d 1317, 1321 (M.D. Fla. 2007). In accordance with this authority, because NTIC issued the binder from NTIC's Florida office, see Response at 4; Koval Affidavit ¶ 5, the Court finds that the NTIC Policy was executed in Florida and is therefore governed by Florida law. As such, the Middle District of Florida is likely more familiar with the applicable law, and this factor also weighs against transfer of the action to North Carolina.

### iv.  Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C., 294 F. Supp.

2d 218, 220 (D. Conn. 2003). In determining the locus of operative facts, the court must look at "the site of events from which the claim arises." Id. (quoting Distefano v. Carozzi N. Am., No. 98-CV-7137, 2002 WL 31640476, at *3 (E.D.N.Y. Nov. 16, 2002)). As to this issue, Penn National argues that North Carolina is the locus of operative facts because both insurance policies were delivered to Linear in North Carolina, and because the NTIC Policy was sold via a North Carolina-based insurance agent. See Motion at 12-13. In response, NTIC contends that Florida is the locus because its policy was executed in Florida, the underlying insurance claim arose in Florida, all of NTIC's witnesses are in Florida, and its policy is to be interpreted according to Florida law. See Response at 5-6.

Although the Eleventh Circuit does not appear to have addressed the determination of the "locus of operative facts" in a declaratory judgment action, the analysis employed by courts outside the Circuit is instructive. For example, in Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005), the court noted that "[w]hen determining the locus of operative facts in a declaratory judgment action concerning the interpretation of an insurance policy contract," it is appropriate to consider where the contract is made. See also Royal Ins. Co. Of Am. v. Tower Records, Inc., No. 02-CV-2612(PKL), 2002 WL 31385815, at *3 (S.D.N.Y. Oct. 22, 2002). Similarly, in Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 842 F. Supp. 2d 1360 (N.D. Ga. 2012), the court concluded that the facts giving rise to an insurance coverage dispute occurred primarily in Georgia, where the subject policies were issued. See id. at 1367. In contrast, other courts have considered the locus of the controversy to be the location where the insurer denied coverage. See, e.g., Abercrombie & Fitch Co. v. Ace European Grp., Ltd., No. 2:11-CV-1114, 2012 WL 2995171, at *6 (citing Cent. States, SE & SW Areas Health & Welfare

-14-

Fund v. Guarantee Trust Life Ins. Co., 8 F. Supp. 2d 1008, 1011 (N.D. Ohio 1998)). In this case, the NTIC Policy was prepared and issued in Florida.  See Koval Affidavit ¶ 5. Additionally, NTIC's adjusters working on Linear's claim were in Florida as well. See id.  As such, even if it is unclear whether Florida is the locus of all the operative facts, it is clear that North Carolina is not. Accordingly, this factor additionally weighs against transfer.

### v.     Weight Accorded to Plaintiff's Choice of Forum

NTIC's choice of forum is entitled to significant weight, and it "should not be disturbed unless it is clearly outweighed by other considerations."  Robinson, 74 F.3d at 260; Response at 3. However, it is also true that "this factor is entitled to less deference when the operative facts are centered outside of this district and when the plaintiff[] do[es] not reside here or in close proximity to this district." Polyform A.G.P. Inc. v. Airlite Plastics Co., No. 4:10-CV-43, 2010 WL 4068603, at *7 (M.D. Ga. Oct. 15, 2010). In the instant case, Penn National contends that the pertinent facts center around events that "primarily occurred in North Carolina." Motion at 14. According to Penn National, such events include: (i) the issuance and delivery of the subject insurance policies; (ii) the terms, conditions, and endorsements of the NTIC Policy; and (iii) the basis of NTIC's denial of coverage to Linear. See id. However, contrary to Penn National's suggestion, the Court has determined that the situs of the contracting and performance of the NTIC Policy – the only one presently at issue – is Florida.[5] See supra at 11-14. Additionally, any decisions regarding the interpretation

---

[5] But cf. Potomac Elec. Power Co. v. Cal. Union Ins. Co., 777 F. Supp. 968, 973 (D.D.C. 1991) (determining that the headquarters of the insured was the location with the most substantial interest in the controversy). In Potomac, the insured sued its insurer directly for failure to pay an indemnification claim. See id. at 970. Here, on the other hand, the insured's claim has been paid, leaving two insurance companies to dispute amongst themselves whose coverage is to apply. In the Court's view, this is a significant factual difference.

of the policy which led to the ultimate denial of coverage allegedly occurred in Florida as well. See Koval Affidavit ¶ 5. Moreover, the Court finds that NTIC's choice of forum is entitled to substantial weight given both that NTIC's principal place of business is located in this district, and that the conduct underlying Linear's claim, which has since given rise to NTIC's cause of action, occurred here. Thus, Penn National's contention that the pertinent events occurred in North Carolina is misplaced.

Nevertheless, Penn National argues that NTIC's choice of forum is entitled to less deference because NTIC filed suit in Florida in anticipation of an impending lawsuit by Penn National. See Motion at 11-12. Specifically, Penn National alleges that it put NTIC "on notice of . . . its intent to file a lawsuit" if NTIC and Penn National could not otherwise resolve their dispute. Id. In response, NTIC asked for additional time to determine whether the dispute could be resolved without litigation, and then NTIC filed suit. See id. at 12. While in certain circumstances this behavior might justify a departure from the "first to file" preference, it does not in this case for two reasons.

First, as noted by the court in Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973 (7th Cir. 2010), the Eleventh Circuit has made reference to a strong presumption in favor of the forum of the first-filed suit, requiring "that the party objecting to jurisdiction . . . carry the burden of proving 'compelling circumstances' to warrant an exception" to the rule (quoting Manuel, 430 F.3d at 1135 (internal citations omitted)). To this end, the Eleventh Circuit concluded that whether a filing is truly anticipatory is only "one equitable factor among many" to be considered in determining whether to hear an action. Manuel, 430 F.3d at 1135-36 (noting that some courts apply the same general factors considered in a motion to transfer when deciding whether to hear a declaratory judgment

action).  Put differently, Eleventh Circuit precedent does not require the Court to transfer or dismiss a declaratory judgment action when such action was filed anticipatorily.  Id. at 1137.  Second, NTIC has filed this action in its home state to determine whether its own policy provides coverage for Linear's underlying claim, which also arose in that state.  See generally Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.").  In light of the foregoing, this factor further weighs against transfer.

### vi.    Trial Efficiency and the Interests of Justice

Finally, Penn National argues that considerations of trial efficiency and the interests of justice mandate transfer.  Penn National asserts that some of the most relevant statistics in evaluating the difficulties of court congestion are "median time from filing to disposition, median time from filing to trial, caseload per judge, and number of civil cases over three years old."  Motion at 15 (quoting Speed Trac Techs., 567 F. Supp. 2d at 805).  Relying on the Federal Court Management Statistics, Penn National maintains that the Middle District of Florida is "significantly more congested" than the Western District of North Carolina.  Motion at 15-16.  Specifically, Penn National notes by way of example that, "in March of 2016, there were 564 filings in the Middle District of Florida versus 218 in the Western District of North Carolina."[6]  Id. at 16.  NTIC responds by noting that efficiency is based not

---

[6] Although not material to the Court's determination, it appears that Penn National misapprehends the Federal Court Management Statistics.  The Middle District of Florida did not receive 564 filings in March of 2016, and the Western District of North Carolina did not receive 218 filings in that time period.  Rather, the Judicial Caseload Profile for the Middle District of Florida reflects that in the 12 month period ending on March 31, 2016, 564 civil actions per authorized district judgeship were filed in this District.  See Table N/A – U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (March 31, 2016), UNITED STATES COURTS, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/03/31-1 (last visited December 7, 2016).  Similarly, the 218 filings figure in the Western District of North Carolina's Judicial
(continued...)

-17-

upon the number of cases the court has, but rather on how quickly the court handles its cases. See Response at 6. NTIC notes that it takes an average of 23.6 months for a case to reach trial or resolution in the Western District of North Carolina, but only 21.1 months in the Middle District of Florida. See id.

"Courts require a significant difference between districts before finding that congestion merits transfer." Speed Trac Techs., 567 F. Supp. 2d at 805. Upon consideration, the Court finds Penn National's argument to be unavailing. While illustrative, the Court notes that total number of new filings is not as significant as the median time from filing to trial or disposition. Indeed, if anything, the disposition statistics cited by NTIC favor retention in this district, as no significant difference is present. Thus, the Court determines that Penn National has failed to demonstrate that the interests of justice weigh in favor of transferring this case to North Carolina.

### vii.   Additional Factors

The Court addresses only those factors disputed by the parties. The factors not expressly addressed, the relative means of the parties and the Court's ability to compel the attendance of unwilling witnesses, have been considered by the Court and are decidedly neutral as to transfer.

## III.   Conclusion

In consideration of the foregoing, the Court finds that any potential inconvenience to the parties and witnesses from litigating this case in the Jacksonville Division does not

---

[6](...continued)
Caseload Profile represents the number of civil actions per authorized district judgeship filed in that district in the 12 month period ending on March 31, 2016. See id.

outweigh NTIC's right to choose its forum.   Indeed, the Court finds that a majority of the disputed convenience factors do not favor transfer, and none strongly favor transfer.  Thus, Penn National has not met its burden to show that the interests of justice warrant transferring this case to the Charlotte Division of the United States District Court for the Western District of North Carolina.  Accordingly, Penn National's Motion is due to be denied.  In light of the foregoing, it is

**ORDERED**:

Defendant's Motion to Dismiss or, Alternatively, Motion to Transfer Venue and Brief in Support of Defendant's Motion (Doc. No. 7) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida on December 9, 2016.

*[Signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc24

Copies to:

Counsel of Record